**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:                                                                          Chapter 7

ANTONIO TAVARIS BROWN,                                    Case No. 24-14931-PDR

      Debtor.

_____/

**TRUSTEE'S MOTION TO APPROVE SETTLEMENT AND**
**COMPROMISE OF CONTROVERSIES WITH DEBTOR AND RELATED**
**PARTIES PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

Les S. Osborne, solely as the Chapter 7 Trustee for the estate of Antonio Tavaris Brown

(the "Debtor") and not individually (the "Trustee"), through his undersigned counsel, files the

*Trustee's Motion to Approve Settlement and Compromise of Controversies with Debtor and*

*Related Parties Pursuant to Federal Rule of Bankruptcy Procedure 9019* (this "Motion") pursuant

to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking

approval of that certain settlement agreement dated as of December 11, 2025, annexed hereto as

**Exhibit A** (the "Settlement Agreement") by and between the Trustee, on one hand, and the Debtor,

AB Brown Family LLLP (the "Brown Partnership"), and Antonio Brown a/k/a Antonio El-Allah

as Trustee of the Antonio El-Allah Express Trust (the "Brown Trust", and collectively with the

Debtor and the Brown Partnership, the "Defendants"), on the other hand, subject to approval by

this Court.  The Settlement Agreement globally resolves certain claims that Trustee asserted

against the Defendants in two separate adversary proceeding cases, as more specifically described

below, as well as other issues in dispute between the parties.[1]   In support hereof, the Trustee respectfully represents as follows:

## I.        Relevant Background

1.        On May 20, 2024 (the "Petition Date"), the Debtor filed a Subchapter V voluntary petition for relief under title 11 of the United States Code commencing this case [ECF No. 1].

2.        On April 28, 2025, the Debtor stipulated to certain facts in the *Stipulation of Uncontested Facts for Evidentiary Hearing on April 29, 2025 at 10:00 a.m.* [ECF No. 244] (the "April Stipulation").

3.        On May 1, 2025, an Order was entered converting the Chapter 11 case to one under Chapter 7 [ECF No. 254] (the "Conversion Order"), and on the same day, the Trustee was duly appointed as the Chapter 7 Trustee responsible for administering the Debtor's estate [ECF No. 255].

4.        On July 23, 2025, the Trustee initiated the Dolce Adversary against the Defendants seeking, among other things, a declaratory judgment that the Debtor is the lawful owner of real estate located at 8609 Dolce Vita Lane, Odessa FL 33556 (the "Dolce Property").  As stipulated to in the April Stipulation, Boomin Productions, LLC ("Boomin"), an entity owned and controlled by the Debtor, purchased the Dolce Property on or around July 9, 2021, and then transferred the Dolce Property to the Brown Trust for no consideration on January 17, 2023.  Further, pursuant to the April Stipulation, on March 20, 2024, two months prior to the Petition Date, the Brown Trust transferred the Dolce Property to Brown Partnership[2], which is owned and controlled by the

---

[1]     *See* Adv. P. No. 25-01261 (the "**Dolce Adversary**") and Adv. P. No. 25-01293 (the "**Oak Circle Adversary**", and together with the Dolce Adversary, the "**Adversary Cases**").

[2]     Pursuant to the April Stipulation, (a) the only general partner of Brown Partnership is AB Brown Sr., LLC ("AB LLC"); (b) AB LLC is an entity managed by the Antonio T. Brown, Sr. Living Trust (the "Brown Living Trust"); (c) the Debtor established the Brown Living Trust on October 17, 2019; (d) the Debtor was and remains the only

Debtor, for no consideration. The Trustee believes and asserts that the Debtor's assets were used to purchase the Dolce Property and at all material times the Debtor has owned and exercised dominion and control of the Dolce Property. The Trustee and Debtor believe the value of the Dolce Property, which is unencumbered, is worth between $3 million and $4.5 million dollars.

5.     On September 4, 2025 the Trustee initiated the Oak Circle Adversary against the Defendants seeking to avoid and recover an unauthorized post-petition transfer of real estate located at 3600 East Oak Circle, Hollywood, FL 33312 (the "Oak Circle Property"). The Trustee believes and asserts that after entry of the Conversion Order, the Debtor, without approval from the Court or the Trustee, transferred his sole interest in the Oak Circle Property by quit-claim deed to Brown Partnership, which is owned and controlled by the Debtor. The Trustee and Debtor believe the value of the Oak Circle Property, which is unencumbered, is worth between $8 million and $9 million dollars.

6.     The Trustee believes the Debtor also has an interest in a third property located at 4315 W. Leona Street, Tampa, FL 33629 (the "Leona Street Property"). As stipulated to in the April Stipulation, Boomin purchased the Leona Street Property on or around April 8, 2022 for $1,759,000 in cash. The Trustee believes and asserts that Debtor fully funded the purchase of the Leona Street Property on behalf of Boomin and that Boomin LLC then transferred the Leona Street Property to the Brown Trust on January 17, 2024, for no consideration. The Debtor, individually and as trustee of the Brown Trust, then transferred the Leona Street Property from the Brown Trust to the Brown Partnership March 20, 2024, for no consideration. The Trustee believes that, if necessary, he can avoid the transfers and recover the Leona Street Property for the benefit of the

---

trustee and beneficiary of the Brown Living Trust; (e) Brown is the only trustee and beneficiary of the Brown Trust defined above.

84832979;1

Estate.  The Trustee and Debtor believe the value of the Leona Street Property, which is unencumbered, is worth between $1.5 million and $2 million dollars.

7.     The Debtor disputes many of the allegations pertaining to the transfers and ownership of the Dolce property, Oak Circle Property and Leona Street Property and has asserted defenses in the Dolce Adversary Action and Oak Circle Adversary Action.

8.     In this case, the proof of claims on file, before reconciliation, total approximately $10,144,274.  At least four of the claims in the total approximate amount of $6,700,000 (Claim No.'s  13, 14/17, and 16) are primarily intentional tort claims for libel or slander which have not been liquidated and will likely be reduced substantially through the claims reconciliation process.

9.     After good faith, arms-length negotiations between the parties, the Trustee determined in his sound business judgment that a settlement of the Adversary Cases and other disputes between the Trustee and the Debtor/Defendants without the need for further litigation is in the best interest of the Debtor's estate and would maximize and accelerate creditor recoveries, and entered into the attached Settlement Agreement with the Defendants.

## II.     Relief Requested

10.     By this Motion, pursuant to Bankruptcy Rule 9019, the Trustee requests entry of an order (i) authorizing and approving the Trustee's entry into the Settlement Agreement with the Defendants, (ii) finding that the notice provided herein is sufficient, and (iii) granting related relief.

11.     A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit B** (the "Proposed Order").

## III.     The Settlement Agreement

12.     The significant provisions of the Settlement Agreement include the following:

     a.     Dolce Adversary and the Dolce Property. Upon entry of the Proposed Order, and after it becoming final and non-appealable, the Defendants agree to entry of an order

of final judgment in the Dolce Adversary that (i) clears title to the Dolce Property so that title revests in the name of the Debtor, (ii) authorizes entry of a judgment quieting title to the Dolce Property into the name of the Debtor, (iii) acknowledges that the Dolce Property is property of the Debtor's estate, and (iv) requires the Debtor and Brown Partnership, if necessary, to execute and deliver to the Trustee any necessary deeds of conveyance. The Trustee may begin marketing the Dolce Property for sale, but may not actually seek to sell the Dolce Property until after entry of the Proposed Order and title revests to the Debtor. The proceeds from the sale (net of expenses) shall be used to pay administrative expenses of the Debtor's estate and to fund distributions to the Debtor's creditors.  If the proceeds from the sale of the Dolce Property are insufficient to pay all allowed claims in full (including administrative expense claims), then the Debtor shall pay the shortfall either from the cash he has available or, to the extent such cash is insufficient, first from the sale of the Oak Circle Property (subject to the Debtor's homestead exemption, if he claims it, for 1/2 acre of the Oak Circle Property) and second, if necessary, from the sale of the 4315 W Leona Street, Tampa, FL 33629 (the "<u>Leona Street Property</u>").

b.    <u>Oak Circle Adversary and the Oak Circle Property</u>. Upon entry of the Proposed Order, and after it becoming final and non-appealable, the Defendants agree to entry of an order of final judgment in the Oak Circle Adversary that (i) avoids the transfer of the Oak Circle Property from the Debtor to Brown Partnership such that title to the Oak Circle Property is vested in the Debtor; (ii) acknowledges that the Oak Circle Property is property of the Debtor's estate, subject to any claims of exemption asserted by the Debtor and any additional objections raised thereto; and (iii) requires the Debtor and Brown Partnership, if necessary, to execute and deliver to the Trustee any necessary deeds of conveyance.  During the Abatement Period (as defined below), the final judgment shall not be recorded and the official title of the Oak Circle Property shall remain in the name of Brown Partnership during the Abatement Period.  Once the Abatement Period expires, title to the Oak Circle Property shall revest in the name of the Debtor, and the Debtor may only attempt to claim it as exempt under the Florida Homestead exemption 1/2 acre of the Oak Circle Property and the Oak Circle Property can be sold, if necessary, by the Trustee with the Trustee recovering any funds from a sale attributed to the value of the Oak Circle Property greater than 1/2 acre for the benefit of the Debtor's creditors.  Upon entry of the Proposed Order, the Debtor may amend his Schedules to claim the homestead exemption on the Oak Circle Property subject to the Trustee's rights to object to any asserted exemption.  In the event all allowed claims, including administrative expense claims, are paid with interest (if allowed by law) in full from the sale of the Dolce Property or other resources of the Debtor or Defendants, then the order of final judgment in the Oak Circle Adversary shall be vacated and title to Oak Circle Property shall revert back to the name of the Brown Partnership.

c.    <u>Property Maintenance</u>. The Debtor and/or Defendants shall maintain the Dolce Property, the Oak Circle Property, and the Leona Street Property, which shall include paying all maintenance costs, property taxes, homeowners' association dues, charges, fines, and special assessments, and general maintenance and upkeep, including during the Abatement Period.

d.    Abatement. The Trustee shall abate from selling the Oak Circle Property and seeking to recover the Leona Street Property for a period of six (6) months from the date of the Settlement Agreement (the "Abatement Period"), provided that the Defendants cooperate with the Trustee regarding the sale of the Dolce Property and otherwise comply with the terms of the Settlement Agreement.  In addition, the Trustee shall also abate from pursuing any avoidance actions, such as fraudulent transfer or preference claims, for a period of six (6) months from the date of the Settlement Agreement.

e.    Bank Statements. The Debtor shall provide all bank statements, dated as far back as two years from the Petition Date, for all of his accounts, including every entity in which he has an ownership or controlling interest, including, but not limited to Boomin, Brown Partnership, AB Brown Sr., LLC, and Antonio T. Brown, Sr. Living Trust in order for the Trustee to determine if third parties received any preferential or fraudulent transfers. The Trustee shall abate pursuing any avoidance actions against insiders of the Debtor for a period of six (6) months from the date of the Settlement Agreement.

f.    Pursuit of Preference and Fraudulent Transfer Actions. After the Abatement Period expires and provided that the Debtor's estate does not have sufficient resources to pay all allowed claims in full, the Trustee may also, in his discretion, pursue avoidance actions or any other cause of action against Insiders (as that term is defined in the Bankruptcy Code) that would benefit the Debtor's estate.  To the extent that the Trustee has identified any fraudulent or preferential transfers each totaling over $10,000 of cash or in asset value, the recipients of such transfers if related in any way to the Debtor as an Insider (as that term is defined in the Bankruptcy Code), shall execute tolling agreements to preserve the Trustee's statute of limitations, otherwise the Trustee shall initiate actions against such recipients irrespective of the Abatement Period.  Abatement of preference and fraudulent transfer actions does not apply to non-Insiders and the Trustee may pursue such claims at his discretion.

g.    Objections to Claims.  The Parties agree that the Order approving this Agreement shall provide that the Debtor has standing to file colorable objections to any and all claims.  The Debtor shall first present any objections to the Trustee, who shall determine whether they are potentially valid.  If the Trustee determines that such objections to claims are potentially valid, he shall join in the Debtor's objection.  On the other hand, if the Trustee determines that any objections to claims are invalid, he shall have the right to oppose any such objections to claims. For the avoidance of doubt, the Trustee has standing, and shall have the right, to assert objections to claims that he deems invalid.

h.    Dischargeability Deadline. The Trustee shall have a six month extension of his deadline to file an objection to the Debtor's discharge under 11 U.S.C. § 727.

13.    The foregoing terms are only a summary of the key provisions of the Settlement Agreement and the actual terms and provisions of the Settlement Agreement shall control.

84832979;1

14.     For the reasons described herein, the Trustee believes that entry into the Settlement Agreements is in the best interest of the Debtor's estate and will maximize and accelerate distributions to creditors.

### IV.     Relief Requested Should Be Granted

15.     Bankruptcy Rule 9019(a) provides that upon a trustee's motion and "after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).

16.     This Court has previously held that "[i]t has long been the law that approval of a settlement in a bankruptcy proceeding is within the sound discretion of the court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion."  *In re Litten*, 2007 WL 2020159, at *1 (Bankr. S.D. Fla. July 5, 2007); *see also In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988) ("approval of a settlement in a bankruptcy proceeding is within the sound discretion of the Court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion") (citing *Rivercity v. Herpel (In re Jackson Brewing Co.*), 624 F.2d 599, 602–03 (5th Cir. 1980); *Anaconda-Ericsson, Inc. v. Hessen* (*In re Teltronics Servs., Inc.*), 762 F.2d 185, 189 (2d Cir. 1985) (hereinafter, "*Teltronics*"); *In re Prudence Co.*, 98 F.2d 559 (2d Cir. 1938), *cert denied sub nom. Stein v. McGrath*, 306 U.S. 636 (1939)).

17.     The test is whether the proposed settlement "falls below the 'lowest point in the range of reasonableness.'"  *Arrow Air*, 85 B.R. at 891 (quoting *Teltronics*, 762 F.2d at 189).

18.     The Supreme Court requires that all court-approved settlements must be "fair and equitable" before they can be approved by the court. *See Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  Under Eleventh

Circuit precedent, a bankruptcy court's analysis to approve or disapprove a proposed settlement must be predicated upon the following considerations:

  a.  The probability of success in the litigation;
  b.  the difficulties, if any, to be encountered in the matter of collection;
  c.  the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and]
  d.  the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd.* (*In re Justice Oaks II. Ltd.*), 898 F.2d 1544, 1549 (11th Cir. 1990) (citing sources omitted).  In a later decision, the Eleventh Circuit clarified that it is not necessary for a bankruptcy court to explicitly consider *all* four factors from *Justice Oaks* when approving a proposed settlement.  *See Chira v. Saal et al. (In re Chira)*, 567 F.3d 1307, 1313 (11th Cir. 2009) (affirming a bankruptcy court's approval of a settlement agreement where the bankruptcy court explicitly evaluated only two of the four Justice Oaks factors).  Instead, bankruptcy courts should consider the four *Justice Oaks* factors "to determine the fairness, reasonableness and adequacy of a proposed settlement agreement."  *Id.* at 1312–13.

19.    Under a Bankruptcy Rule 9019 analysis, the bankruptcy court may also "give weight to the Trustee's informed business judgment."  *In re Southeast Banking Corp.*, 314 B.R. 250, 273 (Bankr. S.D. Fla. 2004); *Abeles v. Infotechnology, Inc.* (*In re Infotechnology, Inc.*), 89 F.3d 825 (2d Cir. 1995) (noting that in considering a proposed settlement, the bankruptcy court's role is not to substitute its judgment for that of the debtor-in-possession).  A bankruptcy court should not substitute its own judgment for that of the trustee or debtor in possession when ruling on a proposed compromise.  *See McMasters v. Morgan (In re Morgan)*, 2011 WL 3821102 at *1 (11th Cir. Aug. 29, 2011) (affirming a bankruptcy court order approving a "settlement because it was the Trustee's best business judgment that the settlement be approved"); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("The reviewing court need not conduct

its own investigation concerning the reasonableness of the settlement and may credit and consider the opinion of the [t]rustee and counsel that the settlement is fair and equitable.").

20.     In this case, the Settlement Agreement was the result of extensive, arm's-length negotiations between the Trustee and the Defendants, each of which were represented by competent legal counsel.  Approval of the Settlement Agreement is in accordance with strong public policy that favors pre-trial settlement in all types of litigation.  *See In re Grau*, 267 B.R. 896, 899 (Bankr. S.D. Fla. 2001).  In the present matter, while not required, each of the four elements articulated in *Justice Oaks* demonstrates that the Court should approve the Settlement Agreement.

21.     After a full evaluation of the costs and benefits of litigation of the Adversary Cases and/or claims against the Leona Street Property, the Trustee determined that, while he is likely to prevail, there exists a potential for adverse rulings and thus entry into the Settlement Agreement is in the best interest of the Debtor's estate.  Even if the Trustee were to forego settlement and pursue the Adversary Cases through trial, the collectability of any judgment or award would not be in doubt as the value of the real estate is likely worth significantly more then the claims asserted against the Estate.  What is more, the costs associated with litigation of the Adversary Cases, which may include significant document and deposition discovery, evidentiary hearings, and possibly multiple appeals, will be substantial and would result in a significant cost and delay to the administration of the Debtor's estate to the prejudice of the Debtor's creditors.  The Trustee believes, in his sound business judgment, that the Settlement Agreement will result in the best and quickest recovery for the Debtor's creditors as the value of the Debtor's interests in the Dolce Property, Oak Circle Property and Leona Street Property alone is likely worth greater then the

84832979;1

claims asserted against the Estate . Accordingly, the Trustee submits that the Settlement Agreement satisfies Bankruptcy Rule 9019 and should be approved.

## V.        Reservation of Rights

22.    Nothing contained herein is intended to be or shall be deemed as (i) an implication or admission as to the validity of any defenses or counterclaims that were raised or could be raised in the Adversary Cases; (ii) a waiver or limitation of the Trustee's or any party in interest's rights to dispute the amount of, basis for, or validity of any claim; (iii) a waiver of the Trustee's or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law; (iv) a waiver of the obligation of any party in interest to file a proof of claim; (v) an agreement or obligation to pay any claims; or (vi) a waiver of any claims or causes of action which may exist against any party.

23.    As provided in the Settlement Agreement, the Debtor shall have standing to file colorable objections to any and all claims, who shall first present any objections to the Trustee. The Trustee shall then determine whether such claims are potentially valid and, if so, the Trustee shall join in the Debtor's objection. Further, if the Trustee determines that any objections to claims are invalid, he shall have the right to oppose any such objections. For the avoidance of doubt, the Trustee has standing, and shall have the right, to assert objections to claims that he deems invalid.

## VI.        Notice

24.    The Trustee will serve this Motion on all appropriate parties and will file a separate certificate of service identifying the specific parties served with this Motion and the notice of hearing when issued. The Trustee requests that the Court make a determination that all necessary parties have received the requisite notice. Assuming that the Settlement Agreement is approved, the Trustee seeks authority to: (a) effectuate all actions contemplated by the Settlement Agreement;

84832979;1

and (b) execute any documents in connection with the furtherance of the Settlement Agreement, as he deems reasonable, necessary and/or desirable to effectuate the Settlement Agreement. Finally, assuming that the Settlement Agreement is approved, the Trustee requests that the Court retain sole and exclusive personal and subject matter jurisdiction to: (a) interpret, implement, and enforce (i) the terms and conditions of the Settlement Agreement, the Motion and the Order approving the Settlement Agreement; and (ii) all related matters; and (b) adjudicate any and all disputes of any type arising from or related to (i) the Settlement Agreement, this Motion and the Order approving the Settlement Agreement, and (ii) all related matters.

**WHEREFORE**, the Trustee respectfully requests that the Court (i) enter the Proposed Order approving the Settlement Agreement, (ii) find that the notice provided is sufficient, and (iii) granting all other relief that is just and proper.

Dated: December 23, 2025                              Respectfully submitted,

By: */s/ D. Brett Marks*
    D. Brett Marks, Esq.
    Florida Bar No.: 099635
    Email: brett.marks@akerman.com
    **AKERMAN LLP**
    201 East Las Olas Boulevard, Suite 1800
    Fort Lauderdale, FL 33301-2999
    Tel: (954) 463-2700
    Fax: (954) 463-2224

    *Proposed Counsel for the Trustee*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on December 23, 2025, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to

those parties registered to receive electronic notices of filing in this case as listed in the attached

service list.

By: */s/ D. Brett Marks*
D. Brett Marks, Esq.

84832979;1

# EXHIBIT "A"

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (this "<u>Agreement</u>") is made as of December [•], 2025 (the "<u>Effective Date</u>"), and entered into by and between Les S. Osborne, solely as the Chapter 7 Trustee for the estate of the Antonio Tavaris Brown, and not individually (the "<u>Trustee</u>" or the "<u>Plaintiff</u>"), Antonio Tavaris Brown (the "<u>Debtor</u>"), AB Brown Family LLLP (the "<u>Brown Partnership</u>"), and Antonio Brown a/k/a Antonio El-Allah as Trustee of the Antonio El-Allah Express Trust (the "Brown Trust") (collectively with the Debtor, Brown Partnership and the Brown Trust, the "<u>Defendants</u>").  The parties to this Agreement are collectively referred to as the "Parties" or singularly, as a "Party."

## RECITALS

A.     On May 20, 2024 (the "<u>Petition Date</u>"), the Debtor filed a voluntary Subchapter V petition for relief under title 11 of the United States Code (the "<u>Bankruptcy Code</u>") commencing this case in the United States Bankruptcy Court for the Southern District of Florida (the "<u>Bankruptcy Court</u>").

B.     On April 28, 2025, the Debtor stipulated to certain facts in the *Stipulation of Uncontested Facts for Evidentiary Hearing on April 29, 2025 at 10:00 a.m.* (Case No. 24-14931, Docket No. 244) (the "<u>April Stipulation</u>").

C.     On May 1, 2025 the Bankruptcy Court entered an order converting the Chapter 11 case to one under Chapter 7.  (Case No. 24-14931, Docket No. 254).  That same day, the Trustee was duly appointed as the Chapter 7 Trustee responsible for administering the Debtor's bankruptcy estate.  (Case No. 24-14931, Docket No. 255).

D.     On July 23, 2025, the Trustee initiated an adversary proceeding (Adv. Case No. 25-01261) against the Defendants seeking a declaratory judgment that the Debtor is the lawful owner of non-exempt real estate located at 8609 Dolce Vita Lane, Odessa, FL 33556 (the "<u>Dolce Vita Property</u>" and, the adversary proceeding, the "<u>Dolce Adversary</u>").

E.     On September 4, 2025, the Trustee initiated an adversary proceeding (Adv. Case No. 25-01293) against the Defendants seeking to avoid and recover an alleged unauthorized post-petition transfer of real estate located at 3600 Estate Oak Circle, Hollywood, FL 33312 (the "<u>Oak Circle Property</u>" and, the adversary proceeding, the "<u>Oak Circle Adversary</u>" and, together with the Dolce Adversary, the "<u>Adversary Proceedings</u>").

F.     The Parties have negotiated at arms-length and in good faith and have agreed to resolve all matters disputed in the Adversary Proceedings without the need for further litigation, upon the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the foregoing facts, and the terms, conditions, agreements, representations, and covenants set forth herein, the Parties agree as follows:

## AGREEMENT

1.    <u>Recitals</u>.  The above recitals are incorporated herein and made a part hereof, and each Party acknowledges that the recitals are true and correct to the best of the Party's knowledge, information, and belief, and each is a material inducement to enter into this Agreement.

2.    <u>Dolce Adversary</u>.  Upon entry of an order approving this Agreement and after the order becomes final and non-appealable, the Defendants agree to entry of an order of final judgment in the Dolce Adversary that (i) clears title to the Dolce Property so that title revests in the name of the Debtor, (ii) authorizes entry of a judgment quieting title to the Dolce Property into the name of the Debtor, (iii) acknowledges that the Dolce Property is property of the Debtor's bankruptcy estate; and (iv) requires the Debtor and Brown Family Partnership, if necessary, to execute and deliver to the Trustee any deeds of conveyance necessary to effectuate the terms of this Agreement.  Upon execution of this Agreement, the Parties agree that the Trustee may begin marketing the Dolce Property for sale, but the Trustee may not actually seek to sell the Dolce Property until this Agreement is approved by the Court through a final order and title revests to the Debtor.

3.    <u>Oak Circle Adversary</u>.  Upon entry of an order approving this Agreement and after the order becomes final and non-appealable, the Defendants agree to entry of an order of final judgment in the Oak Circle Adversary that (i) avoiding the transfer of the Oak Circle Property from the Debtor to the Brown Partnership such that title to the Oak Circle Property is vested in the Debtor; and (ii) acknowledges that the Oak Circle Property is property of the Debtor's bankruptcy estate, subject to any claims of exemption asserted by the Debtor and any additional objections raised thereto; and (iii) requires the Debtor and Brown Family Partnership, if necessary, to execute and deliver to the Trustee any deeds of conveyance necessary to effectuate the terms of this Agreement..

4.    <u>Dolce Property</u>.  The Defendants agree that the Trustee is authorized to sell the Dolce Property, and the proceeds from the sale (net of expenses) shall be used to pay administrative expenses of the Debtor's bankruptcy estate and to fund distributions to the Debtor's creditors.  If the proceeds from the sale of the Dolce Property are insufficient to pay all allowed claims in full (including administrative expense claims), then the Debtor shall pay the shortfall either from the cash he has available or, to the extent such cash is insufficient, first from the sale of the Oak Circle Property (subject to the Debtor's homestead exemption for ½ acre of the Oak Circle Property) and second, if necessary, from the sale of the 4315 W Leona Street, Tampa, FL 33629 (the "<u>Leona Street Property</u>").

5.    <u>Oak Circle Property</u>.  The Parties agree that the Final Judgment agreed to in paragraph 3 above shall not be recorded in Broward County Florida or elsewhere during the Abatement Period as referenced in paragraph 7 below such that official title of the Oak Circle Property shall remain in the name of the Partnership during the Abatement Period.  The Debtor agrees that once the Abatement Period expires, title to the Oak Circle Property is revested in the name of the Debtor, then the Debtor may only claim as exempt under the Florida Homestead exemption ½ acre of the Oak Circle Property and the Oak Circle Property can be sold as set forth in paragraph 4 above if necessary, by the Trustee with the Trustee recovering any funds from a sale attributed to the value of the Oak Circle Property greater than ½ acre for the benefit of the

Estate's creditors. Upon entry of final order approving this Agreement, the Debtor may amend his Schedules to claim the homestead exemption on the Oak Circle Property subject to the Trustee's rights to object as set forth in this Agreement. In the event all allowed claims, including administrative expense claims, are paid with interest (if allowed by law) in full from the sale of the Dolce Property or other resources of the Debtor or Defendants, then the order referenced in paragraph 3 above shall be vacated and title to Oak Circle Property shall revert back to the name of the Brown Partnership.

6.    Property Maintenance.  The Debtor and/or Defendants agree to maintain the Dolce Property, Oak Circle Property, and Leona Street Property, which shall include paying all maintenance costs, property taxes, homeowners' association dues, charges, fines, and special assessments, and general maintenance and upkeep, including during the Abatement period explained below.

7.    Abatement.  The Trustee shall abate from selling the Oak Circle Property and seeking to recover the Leona Street Property for a period of six (6) months from the Effective Date (the "Abatement Period"), provided that the Defendants cooperate with the Trustee regarding the sale of the Dolce Property and otherwise complies with the terms of this Agreement. In addition, the Trustee shall also abate from pursuing any avoidance actions, such as fraudulent transfer or preference claims, for a period of six (6) months from the Effective Date.

8.    Bank Statements.  The Debtor shall provide all bank statements, dated as far back as two years from the Petition Date, for all of his accounts, including every entity in which he has an ownership or controlling interest, including, but not limited to Boomin Estates, LLC, AB Brown Family LLLP, AB Brown Sr., LLC, Antonio T. Brown, Sr. Living Trust in order for the Trustee to determine if third parties received any preferential or fraudulent transfers. As set forth in Paragraph 7, the Trustee shall abate pursuing any avoidance actions against insiders of the Debtor for a period of six (6) months from the Effective Date.

9.    Pursuit of Preference and Fraudulent Transfer Actions.  After the Abatement period provided in Paragraph 6 expires and provided that the Estate does not have sufficient resources to pay all allowed claims in full, the Trustee may also, in his discretion, pursue avoidance actions or any other cause of action against Insiders (as that term is defined in the Bankruptcy Code) that would benefit of the Estate.   To the extent that the Trustee has identified any fraudulent or preferential transfers each totaling over $10,000 of cash or in asset value, the recipients of such transfers if related in any way to the Debtor as an Insider (as that term is defined in the Bankruptcy Code), shall execute tolling agreements to preserve the Trustee's statute of limitations, otherwise the Trustee shall initiate actions against such recipients irrespective of the Abatement period. Abatement of preference and fraudulent transfer actions does not apply to non-Insiders and the Trustee may pursue such claims at his discretion.

10.    Objections to Claims.  The Parties agree that the Order approving this Agreement shall provide that the Debtor has standing to file colorable objections to any and all claims. The Debtor shall first present any objections to the Trustee, who shall determine whether they are potentially valid. If the Trustee determines that such objections to claims are potentially valid, he shall join in the Debtor's objection. On the other hand, if the Trustee determines that any objections to claims are invalid, he shall have the right to oppose any such objections to claims.

For the avoidance of doubt, the Trustee has standing, and shall have the right, to assert objections to claims that he deems invalid.

11.    Dischargeability Deadline. The Trustee shall have a six month extension of his deadline to file an objection to the Debtor's discharge under 11 U.S.C. § 727.

12.    Authority. Each Party signing this Agreement, and any other documents executed in connection with this Agreement, whether signed individually or on behalf of any person or entity, warrants and represents that he or she has full authority to so execute this Agreement on behalf of the Party or Parties on whose behalf he or she so signs. Each Party signing this Agreement separately acknowledges and represents that this representation and warranty is an essential and material provision of this Agreement and will survive execution of this Agreement. Notwithstanding the foregoing, or anything contrary in this Agreement, this Agreement is subject to approval by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

13.    Bankruptcy Court Approval. This Agreement is subject to the entry of a final order of the Bankruptcy Court approving this Agreement and its terms. The terms of this Agreement will be embodied in a motion to approve settlement (the "9019 Motion") in a form acceptable to all Parties that will be filed by the Trustee in the Bankruptcy Case. The Trustee and the Defendants shall support such 9019 Motion and agree not to oppose or appeal therefrom.

14.    Inability to Obtain Approval. In the event this Agreement is not approved by the Bankruptcy Court in the form of a non-appealable and final order within 60 days of the date of this Agreement, and if this time limitation is not extended or waived in writing by the Trustee, then this Agreement shall be deemed null and void in its entirety, the Parties will be released of all obligations hereunder, and the Parties shall be restored to their respective position as if this Agreement never existed.

15.    Governing Law. This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Florida applicable to contracts made and to be performed fully within the State of Florida. The Parties consent to the jurisdiction of the Bankruptcy Court for any and all disputes arising out of or resulting from this Agreement.

16.    Entire Agreement. This Agreement contains the entire understanding and agreement between and among the Parties hereto with respect to the matters referred to herein. No other representations, covenants, undertakings, or other prior or contemporaneous agreements, oral or written, respecting such matters, which are not specifically incorporated herein, will be deemed in any way to exist or bind any of the Parties hereto. The Parties hereto acknowledge that each Party has not executed this Agreement in reliance on any such promise, representation, or warranty not expressly contained in this Agreement.

17.    Binding on Successors, Assigns and Others. This Agreement and the covenants and conditions contained herein will apply to, be binding upon, and inure to the benefit of the Parties and the heirs, executors, administrators, conservators, debtors, agents, legal representatives, successors, transferees, and assigns of the Parties hereto.

18.     Advice of Counsel. The Parties acknowledge that they have been (or have had the opportunity to be) represented by counsel of their own choice in the negotiations leading up to the execution of this Agreement and that they have read this Agreement and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of this Agreement, and each Party understands the terms and provisions of this Agreement and its nature and effect. Each Party further represents that they are entering into this Agreement freely and voluntarily, relying solely upon the advice of their own counsel if applicable, and not relying on representation of any other Party or of counsel for any other Party.

19.     Counterparts and Facsimiles.   This Agreement may be executed in multiple counterparts, each of which will be deemed an original Agreement, and all of which will constitute one agreement. Any signature in counterpart provided by facsimile and/or by electronic mail with an Adobe PDF attachment of this Agreement shall be deemed an original signature.

20.     Meaning of Pronouns and Effect of Headings. As used in this Agreement, the masculine, feminine, and/or neutral gender, in the singular or plural, will be deemed to include the others whenever the text so requires. The captions and paragraph headings in this Agreement are inserted solely for convenience or reference and will not restrict, limit, or otherwise affect the meaning of the terms contained in this Agreement.

21.     Construction. This Agreement will be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity will not be interpreted against any one particular Party.

22.     Modification.   This Agreement, and any of the covenants, conditions, and representations contained herein, may not be waived, changed, altered, modified, or terminated except by an instrument in writing signed by all Parties.

IN WITNESS WHEREOF, the Parties intending to be legally bound have duly executed and delivered this Agreement as of the Effective Date.

**Les S. Osborne, in his capacity as**
**Chapter 7 Trustee for the estate of the**
**Debtor, Antonio Tavaris Brown**

By: _____
    Les S. Osborne, Trustee

**Antonio Tavaris Brown**

By: _____


**AB Brown Family LLLP**

By: _____
Name:
Its:

**Antonio Brown a/k/a Antonio El-Allah as**
**Trustee of the Antonio El-Allah Express**
**Trust**

By: _____
Name:
Its:

84535820,1

**Les S. Osborne, in his capacity as
Chapter 7 Trustee for the estate of the
Debtor, Antonio Tavaris Brown**

By: _____
        Les S. Osborne, Trustee

**Antonio Tavaris Brown**

By: _____


**AB Brown Family LLLP**

By: _____
Name:   Brian Davis
Its:     Trustee

**Antonio Brown a/k/a Antonio El-Allah as
Trustee of the Antonio El-Allah Express
Trust**

By: _____
Name: _____
Its: _____

# EXHIBIT "B"

**Privileged & Confidential**
**Akerman Draft 12-15-25**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:                                                              Chapter 7

ANTONIO TAVARIS BROWN,                       Case No. 24-14931-PDR

      Debtor.
_____/

**ORDER GRANTING TRUSTEE'S MOTION TO APPROVE SETTLEMENT**
**AND COMPROMISE OF CONTROVERSIES WITH DEBTOR AND RELATED**
**PARTIES PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

THIS MATTER came before the Court upon the *Trustee's Motion to Approve Settlement and Compromise of Controversies with Debtor and Related Parties Pursuant to Federal Rule of Bankruptcy Procedure 9019* [ECF No. _____] (the "Motion")[1] noticed by the Court for hearing on _____ at _____ : _____ am/pm (the "Hearing"). The Motion and Notice of Hearing were properly served[2] on all creditors of the Debtor's estate and no interested party filed a written objection with the Court nor interposed an objection at the Hearing.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.
[2]    *See* ECF No. _____.

84707392;4

Privileged & Confidential
Akerman Draft 12-15-25

The Court, having reviewed the Motion, the record in this case, and the presentation by counsel at the Hearing, having been duly advised in the premises, having noted that the Motion was properly served and noticed to all creditors and interested parties, having noted that no interested party filed an objection or otherwise objected at the Hearing, and having found that based upon the record before the Court that entry into the Settlement Agreement annexed hereto as **Exhibit A** is appropriate and a sound exercise of the Trustee's business judgment, and satisfies the factors enumerated in *Wallis v. Justice Oaks II, Ltd.* (*In re Justice Oaks II Ltd.*), 898 F.2d 1544, 1549 (11th Cir. 1990), the Court hereby finds that good cause exists to grant the relief requested in the Motion, and **ORDERS as follows**:

1.      The Motion is GRANTED.

2.      The Trustee is authorized, but not directed, to enter into the Settlement Agreement, and the Settlement Agreement is hereby APPROVED in its entirety.

3.      The failure to specifically include or reference any particular term or provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such term or provision.

4.      The Settlement Agreement is the product of extensive, good faith, and arms' length negotiations between the Trustee and Defendants, and their respective representatives.

5.      The Trustee and Defendants are authorized to take any and all actions necessary to enter into, perform, execute, deliver, and consummate the Settlement Agreement, and take all actions necessary to fully implement and effectuate the Settlement Agreement in accordance with its terms and conditions, all of which are hereby approved.

6.      In accordance with the Settlement Agreement, the Debtor shall have standing to file colorable objections to any and all claims, who shall first present any objections to the Trustee.

84707392;4

**Privileged & Confidential**
**Akerman Draft 12-15-25**

The Trustee shall then determine whether such claims are potentially valid and, if so, the Trustee shall join in the Debtor's objection.  Further, if the Trustee determines that any objections to claims are invalid, he shall have the right to oppose any such objections.  For the avoidance of doubt, the Trustee has standing, and shall have the right, to assert objections to claims that he deems invalid.

7.      The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

###

Submitted by:

D. Brett Marks, Esq.
Florida Bar No.: 099635
Email: brett.marks@akerman.com
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301-2999
Tel: (954) 463-2700
Fax: (954) 463-2224

*Counsel for the Trustee, Les S. Osborne*

*Attorney Marks is directed to serve copies of this Order upon all interested parties and to file a certificate of service with the Court.*

84707392;4